Case No. 23-1145

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT COURT

_____

Stephen Caudle,
*Plaintiff/Appellant*,

v.

Hard Drive Express, Inc. and James Betz,
*Defendants/Appellees*

_____

**On Appeal from Order and Judgment of the
United States District Court for the Eastern District of Michigan
Case No. 19-cv-11445, Honorable Terrence G. Berg**
_____

**DEFENDANTS'/APPELLEE'S BRIEF ON APPEAL**

| GASIOREK MORGAN | MILLER COHEN, P.L.C. |
|---|---|
| Barbara D. Urlaub (P38290) | Keith Flynn (P74192) |
| Attorney for Defendants/Appellees | Attorney for Plaintiff-Appellant |
| 30500 Northwestern Hwy., Ste. 425 | 7700 Second Avenue, Suite 335 |
| Farmington Hills, MI 48334 | Detroit, Michigan 48202 |
| (248) 865-0001 | (313) 964-4454 |
| burlaub@gmgmklaw.com | kflynn@millercohen.com |

## STATEMENT OF CORPORATE DISCLOSURE

Pursuant to F. R. A. P. 26.1 and F. R. A. P. 28 Defendants-Appellees make the following disclosure:

1. Are said parties a subsidiary or affiliate of a publicly owned corporation?

   Answer: No.

2. Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome of the appeal?

   Answer: No.

# TABLE OF CONTENTS

STATEMENT OF CORPORATE DISCLOSURE ........................................ ii

TABLE OF CONTENTS ............................................................... iii

TABLE OF AUTHORITIES... ...................................................iv-v

STATEMENT SUPPORTING ORAL ARGUMENT... ............................. vi

STATEMENT OF JURISDICTION... ......................................... 1

STATEMENT OF ISSUES PRESENTED .................................... 2

STATEMENT OF THE CASE .................................................. 3

COUNTER-STATEMENT OF FACTS ........................................ 4

SUMMARY OF THE ARGUMENT .......................................... 10

STANDARD OF REVIEW ..................................................... 11

ARGUMENT... .................................................................. 12

CONCLUSION.................................................................. 21

CERTIFICATE OF SERVICE... ............................................. 22

CERTIFICATE OF COMPLIANCE WITH THE RULE 32(g)... ............... 23

ADDENDUM... ................................................................ 24

# TABLE OF AUTHORITIES

## Cases:

*Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir.2006) ................... 12, 13

*Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir.2007) .................................................... 13

*Fritze v. Nexstar Broad*., Inc., 847 F. App'x 312 (6th Cir. 2021) ...........................20

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011)................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ................ 11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973)..........13

*Nevill v. MidMichigan Visiting Nurse Ass'n*, 2019 WL 4891190
(E.D. Mich. Aug. 14, 2019) .....................................................................................14, 15

*Newell Rubbermaid, Inc. v. Raymond Corp.,* 676 F.3d 521 (6th Cir. 2012) ............. 11

*Pace v Edel-Harrelson*, 499 Mich. 1 (2016) ...........................................................21

*Pack v. Damon Corp.,* 434 F.3d 810 (6th Cir. 2006) ................................................. 11

*Strong v. United States*, 192 F.R.D. 566 (E.D. Mich. 2000) ...................................17

*White v. Baxter Healthcare Corp.,* 533 F.3d 381 (6th Cir. 2008) ...........................11

## Statutes:

28 U.S.C. §1331 ...........................................................................................................1

28 U.S.C. §1367(a) ......................................................................................................1

28 U.S.C. §1291 ...........................................................................................................1

29 U.S C. §215(a)(3)....................................................................................................3

M.C.L. §15.362 .....................................................................................................3, 20, 21

## Court Rules:

F.R.A.P. 34 .................................................................................................vi

6th Cir. R. 28(b)(1)(B) ............................................................................vi

6th Cir. R. 34(a) ......................................................................................vi

Fed.R.Civ.P. 56....................................................................................3

## STATEMENT SUPPORTING ORAL ARGUMENT

Defendants-Appellees request oral argument pursuant to 6th Cir. R. 28(b)(1)(B), F.R.A.P. 34 and 6th Cir. R. 34(a), in order to fully present the facts and Defendants' legal theories, and to have the opportunity to answer any questions this Court may have.

## <u>STATEMENT OF JURISDICTION</u>

The District Court for the Eastern District of Michigan had original subject matter jurisdiction over Plaintiff's FLSA retaliation claim pursuant to 28 U.S.C. §1331, and supplemental jurisdiction over his Michigan Whistleblowers' Protection Act claim pursuant to 28 U.S.C. §1367(a).

On February 4, 2022, the district court issued its Order Granting Defendants' Motion for Summary Judgment [R. 47] and entered Judgment in Defendants' favor. [R. 48] Plaintiff filed a timely Motion for Reconsideration [R. 49] which was denied by the court on January 19, 2023.  [R. 56] This Order constituted a final order or judgment that disposed of all claims as matter of law and closed the case. On, February 16, 2023, Plaintiff filed a timely Notice of Appeal in the district court [R. 57]

This Court therefore has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

## STATEMENT OF ISSUES PRESENTED

I.      WHETHER THE TRIAL COURT CORRECTLY FOUND THAT PLAINTIFF FAILED TO PRESENT SUFFICIENT FACTS TO ESTABLISH A PRIMA FACIE CASE OF FLSA RETALIATION, WHERE DEFENDANTS HAD NO NOTICE OF A COMPLAINT RELATING TO A RIGHT PROTECTED BY THE STATUTE.

II.     WHETHER THE TRIAL COURT CORRECTLY FOUND THAT PLAINTIFF FAILED TO PRESENT SUFFICIENT FACTS TO ESTABLISH A PRIMA FACIE CASE UNDER MICHIGAN'S WHISTLEBLOWERS' PROTECTION ACT, WHERE DEFENDANTS HAD NO NOTICE OF A COMPLAINT RELATING TO A RIGHT PROTECTED BY THE STATUTE.

## STATEMENT OF THE CASE

Plaintiff-Appellant Steven Caudle was employed by Defendant-Appellee Hard Drive Express, Inc. as a truck driver from August 24, 2015 until his termination on February 15, 2019. Plaintiff was terminated by Hard Drive's owner, Defendant James Betz, after Plaintiff lodged profane and insubordinate complaints to Betz about a recent change in Hard Drive's vacation/paid time off ("PTO") policy, which Plaintiff believed was unfair.

On June 15, 2019, Plaintiff filed his Amended Complaint[1], alleging that he was terminated in retaliation for asserting rights under the Fair Labor Standards Act in violation of 29 U.S.C. §215(a)(3), and in violation of Michigan's Whistleblowers' Protection Act, M.C.L. §15.362. [R. 5]

After the close of discovery, Defendants filed a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 [R. 37] arguing, among other things, that Plaintiff failed to establish a prima facie case under either statute, because his complaint to Mr. Betz regarding Hard Drive's PTO policy was not protected activity under the FLSA, and not a violation of law implicating the Whistleblowers' Protection Act.[2]

On February 24, 2003, the trial entered its Order Granting Defendants' Motion

_____

[1] Plaintiff's original Complaint was filed on May 16, 2019.
[2] Defendants' Motion raised other legal arguments, but since those were decided by the trial court in Plaintiff's favor, they are not relevant to this appeal.

for Summary Judgment, in which the court held that Plaintiff had failed to establish a prima facie case of FLSA retaliation, because at the time of termination, Plaintiff had "only presented the issue of vacation pay, a fringe benefit not protected under FLSA provisions, and thus not sufficient to meet the [statute's] notice requirement. [R. 47, PageID. 1485] A Judgment was entered the same day. [R. 48] Plaintiff's WPA claim was similarly dismissed, because Plaintiff had not engaged in activity protected by the Whistleblowers' statute. [R. 47, PageID. 1486]

Thereafter, Plaintiff filed a timely Motion for Reconsideration, which was denied by the Court in an Order dated January 19, 2023. [R. 56]. Plaintiff then filed his Notice of Appeal on February 16, 2023. [R. 57]

## COUNTER-STATEMENT OF FACTS

Plaintiff-Appellant Steven Caudle was hired by Defendant-Appellee Hard Drive as a truck driver on February 15, 2019. [Amended Complaint, R. 5, PageId.16] At all times, Plaintiff's services were fully compensated on a per mile basis, per the terms of a driver rate sheet. [R. 37-11, PageId.533] Plaintiff does not allege in his Amended Complaint that for miles actually driven he did not receive his full mileage pay, vacation and safety and bonus pay, for each and every mile he drove. Similarly, Plaintiff does not allege that he was unpaid for stop pay, back-haul pay, drop-and-hook pay and or delay pay after the first hour. [R. 5]

Nevertheless, throughout the course of his employment (commencing in

2017), Plaintiff repeatedly complained, often with profanity, and threatened to report the company, about alleged unpaid services or non-reimbursed, out-of-pocket expenses. Defendant-Appellee James Betz listened and explained the reasons why Plaintiff was wrong, and that he had been fully paid. He was also reminded of requirements for expense reimbursement. [Deposition of James Betz, R. 37-3, PageId. 425-427, 440-441] As the trial court noted, Plaintiff was "lightly chastised" for failing to properly submit receipts for expense reimbursements, but offered no records showing evidence of unreimbursed expenses. [R. 47, PageId. 1482] Further, Plaintiff never acted on any of his threats to "report" the company. [Plaintiff's Answers to Interrogatories, R. 37-4, PageID. 461]

The record evidence shows that, as early as January 3, 2019, Plaintiff had found a new job, and was going to resign from Hard Drive. Hard Drive, through its agent Karol Pawlos (Pawlos), received written requests from Plaintiff to transfer his driver's file to his "new employer" Rio Transport, LLC (Rio) [R. 37-13] In turn, Pawlos provided all the information requested to Rio on January 17, 2019. Id.; See also Affidavit of Karol Pawlos, R. 37-8, PageId. 489] There she attested that the transfer of a driver's file was a condition precedent to a driver in interstate transportation to take new employment.

In light of Caudle's request to have his driver's file sent to Rio, on January 18, 2019, Betz asked Plaintiff whether he was leaving employment with Hard Drive.

[Text Message between Plaintiff and Betz, R. 37-15, PageId. 541]  Plaintiff did not respond to Mr. Betz's text request for information as to his employment plans or status. [Affidavit of J. Betz, R. 37-7, PageId. 482-484]

In this same timeframe, Hard Drive was improving and restating its PTO (paid time off) policy for its drivers.  On the afternoon of January 18, 2019, Pawlos sent an email to all of it drivers., including Plaintiff, to announce the "good news" of this contractual improvement.  [R, No. 37-14, PageId.538-540].  In the email (which attached the actual new policy) Pawlos set forth in simple terms how a driver would apply for and be entitled to receive the benefit.  Specifically, she interpreted the PTO as follows:

> Hi all, I love it when I get to share good news with you. As of Jan. 1 we are able to give all drivers 5 paid days off per year.  This can be a vacation or sick days or personal days off if needed.  Of course there are guidelines for taking this like you must work two weeks prior and two weeks after to collect.  I have attached the guidelines her. Please be reminded that you need to fill out the vacation request form 30 days in advance when possible and please give us any changes in writing.  We need this to make sure there are not mistakes on this end.  If you have questions please call.  Karol

*Id.*  Simple stuff.  In order be paid for time off taken under the new policy, the driver must apply 30 days before, work the two weeks before the leave commenced and the two weeks following the last day of the leave.

However, this complicated things for Plaintiff, who planned to take paid time

off immediately before starting his new job with Rio.  Since Plaintiff was planning on starting work for his new employer, Rio, in February 2019, he would not be able to qualify for PTO under Hard Drive's new policy.  First, because he was starting with Rio in February, he would be unable to give a full 30 days' notice of his intent to take PTO, even if he applied for PTO on January 18, 2019.  Second, because the PTO policy required working the two weeks after the leave, he would be unavailable to do so because he would then be a Rio employee. [R. 37-13] This complication triggered the text message and telephone exchange between Plaintiff and Betz that led to Plaintiff's termination.

On February 15, 2019, just before 1:00 p.m., Plaintiff initiated the following text message exchange with Betz, that quickly grew heated and insubordinate:

> **Caudle:  How does that vacation pay work.  I need to take some time off here soon**
>
> Betz:  Must fill out vacation request form 30 days in advance. Must work 2 weeks before vacation and the 2 weeks after vacation in order to receive your paid days off pay.  It is not call vacation pay.
>
> **Caudle:  You get it for me and sick as well right**
>
> **Caudle:  Never mind buddy I'm not gonna play any games with you I had text first two weeks of March off my wife's getting operated on.**
>
> Betz:  However you want to use it.  It will not be paid until you work 2 full weeks after.  Not letting anyone pull any tricks. According to the labor department I'm giving this as a gift and I do not to pay if an employee tries to pull a fast one.

**Caudle:  I understand man don't worry about it people only treat people they work for the way they treat.**


**Caudle:  Them Just remember that**

Betz:    Another word, I make loans with no interest and still expect to pay to have something done for the truck.

**Caudle:  That's right your truck your company.  I'll get my money don't worry about it.  I'm not gonna argue with you. I'll go to the proper channels.   I've been down this road before I've let it go because things are going pretty good but you're the want to change not me.**

Betz:  You're the one that doesn't understand.  I help all the people that work for one way or another.  Like make loans.  Then not charge them any interest like a bank would.  Then ask someone to take a truck to get something take care of and they want paid paid it.  It has made me very bitter.  It don't mind helping anyone, but get the shit I get after I have hep them not going to happen anymore.  I'm no longer a bank.

Betz:  Can I call you later?

**Caudle:  I give you 10 minutes buddy.  I'm on my way to labor board.  I'm done playing with you, you all me will work this out and Pandora's box won't open very disappointed and you.**

Betz:  But, I have nothing to be scared of, go ahead.  <u>You can threaten me all you want doesn't bother me one bit.  There is absolutely nothing in the laws that says I have to give you paid days off.</u>  Why do you think I sat the way I did, so employees can's screw me.  You have been paid every nickel that you earn. You what you think is best.  Park the drivers truck and make sure it is in the same shape you receive it, because I can hold checks until I check out the truck.  It is in the driver's handbook. I will coming to get the truck at the beginning of the week.

[R. 37-17, PageId. 543-544] (emphasis added)

The sole purpose of Plaintiff's initial text was to inquire about "vacation pay" (meaning the PTO policy). Betz re-explained the policy even though the earlier email from Pawlos clearly set forth the procedure. From there Plaintiff went into a threat mode about the PTO and stated he was "on my way to the labor board". Betz responded that he was not obligated to provide employees paid days off. He further stated that Plaintiff could do what he wanted to do, but "park the truck" and he "would be coming to get it at the beginning of the week." Plaintiff was terminated.

Betz's telephone records show that after the first texts on February 15, 2019, Plaintiff called Betz and left a voicemail. There were also two subsequent calls. [R. 37-16, PageID.542] In those calls, Plaintiff voiced his displeasure with the PTO policy and he again stated that he was going to file a complaint with "the labor board." During two telephone calls at 1:44 p.m. and 2:03 p.m., Plaintiff argued with Betz and called him a mother f---er, a son of a b---h and an a--hole. [R. 37-3, Page ID. 435, 441] In one of the calls Mr. Betz told him if he was not happy at the Company, he should look for employment elsewhere. R. 37-3, PageId. 436] At this time Mr. Betz did not know that Plaintiff already had new employment. [R. 37-7, PageId. 485]

Mr. Betz did not care if Plaintiff went to "the labor board. In fact, Betz agreed to go to the labor board with Plaintiff. The conclusion of the February 15 text

messages read: "I will be glad to meet you at the labor board in Ohio"; and, "Would you like me to set up an appointment with the Labor Board in Michigan?" Plaintiff was terminated because: ".... you were and have several times been argumentative with me and the office. I decided you no longer needed to be employed with Hard Drive Express." [R. 37-17. PageId. 546]

Ninety days after his termination, Plaintiff filed his Complaint in the district court.

## SUMMARY OF THE ARGUMENT

The issue before this Court is narrow and straightforward. The trial court analyzed all evidence presented at Summary Judgment in the light most favorable to Plaintiff, but determined that on the date of Plaintiff's termination, he complained to Defendants about Hard Drive's new PTO policy, and that under that policy, he would not be able to get paid for planned time off before he started his new job with Rio. Since PTO time is not mandated under the FLSA, Defendants were not on notice of a claim of violation of a right protected by the statute. Plaintiff therefore failed to present evidence of a prima facie case of FLSA retaliation.

For similarly reasons, Summary Judgment was also granted in Defendants' favor on Plaintiff's state Whistleblower Protection Act claim. Since Defendants' PTO policy did not violate any state or federal law or regulation, Plaintiff did not

engage in protected activity under the WPA, and Defendants were entitled to Judgment as a matter of law. Both of these findings should be affirmed.

## STANDARD OF REVIEW

The district court's decision granting summary judgment in favor of Defendants is reviewed by this Court de novo. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a).*

"In evaluating a motion for summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party." *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Rule 56 "require[s] that the party seeking to avoid summary judgment must point to evidence in the record demonstrating a genuine dispute of material fact." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for *trial.'"* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814.

**ARGUMENT**

**I.  The trial court correctly found that Plaintiff failed to establish a prima facie case of FLSA retaliation, where Defendants were on notice only of a complaint regarding the PTO policy, which is not regulated by the FLSA.**

Count I of Plaintiff's Amended Complaint alleged that he was terminated in retaliation for having exercised a right protected by the Fair Labor Standards Act. Specifically, Plaintiff alleged that on February 15, 2019, he was terminated because he threatened to go the "labor board" to complain about "unpaid wages."  After a careful review of the evidence, the trial court correctly granted summary judgment to Defendants on this claim. [R. 5, PageId. 18]

The anti-retaliation provision of the FLSA states that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against an employee because such employee has filed any complaint . . . under or related to this [Act]." 29 U.S.C. § 215(a)(3). A plaintiff establishes a prima facie case of retaliation by showing:

(1) he or she engaged in a protected activity under the FLSA;
(2) his or her exercise of this right was known by the employer;
(3) thereafter, the employer took an employment action adverse to [him]; and
(4) there was a causal connection between the protected activity and the adverse employment action.

*Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir.2006).

Because Plaintiff did not produce direct evidence of a retaliatory motive for his discharge, he proceeded in the trial court under the burden-shifting approach articulated

by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). *See Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). Under this analysis, if the Plaintiff establishes the elements of a prima facie case of retaliation, the burden of production shifts to Defendants to articulate a legitimate, non-retaliatory reason for the termination. *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir.2007). If Defendants satisfy the burden of production, the burden shifts back to the Plaintiff to show that the proffered reason was a pretext for retaliation. *Id.* "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion throughout the process." *Id.*

In this case, the trial court concluded that Plaintiff engaged in activity protected under the FLSA when he complained, at various times during his employment, that he was not being paid for certain non-driving services performed for Hard Drive and was not reimbursed for out-of-pocket expenses. These complaints were considered by Betz and company policies were explained; no further action was ever taken by Plaintiff on these occasions.

However, the trial court correctly found that on the date of his termination, Plaintiff was complaining about Hard Drive's newly-instituted PTO policy. The FLSA does not require employers to provide PTO. Plaintiff was not complaining that he had not been paid in accordance with an existing policy; he was complaining because he did not like the new policy and did not think it was fair. The court therefore found that

Plaintiff had failed to meet his burden to establish that Defendants were put on notice that Plaintiff was complaining of a right protected by the FLSA.[3]

As the trial court noted, even where plaintiff makes a good faith complaint, to establish a prima facie claim of retaliation under the FLSA, the defendant must be on notice that a violation of a protected right has occurred. The Supreme Court has established that a complaint must be "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). This rule "contemplates some degree of formality" in the oral complaint such that "the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Id.* "[A]n employee does not make a 'complaint' within the meaning of the FLSA's anti-retaliation provision merely by 'letting off steam,' but instead must give the recipient of the complaint 'fair notice that a grievance has been lodged." *Nevill v. MidMichigan Visiting Nurse Ass'n*, 2019 WL 4891190, at *8 (E.D. Mich. Aug. 14, 2019) (quoting *Kasten*, 563 U.S. at 14; *see also Valerio v. Putnam Associates, Inc.,* 173 F.3d 35, 44 (1st Cir. 1999) ("[N]ot all abstract grumblings will suffice to constitute the filing of a

---

[3] The Court could also have granted Defendants' Motion upon a finding that Plaintiff's complaint regarding PTO was not protected activity under the FLSA. Either way, Plaintiff failed to establish facts to support a prima facie case of retaliation.

complaint with one's employer."). "[T]he question is whether [Plaintiff's] complaint . . . may reasonably be understood as implicating the particular employee rights and compensation practices covered by the FLSA, such that it provided fair notice to Defendant that its compliance with this statute was being called into question." *Id.* *Nevill* at *8.

The trial court correctly concluded that Plaintiff did not meet his burden to establish adequate notice to Defendants of a complaint relating to a violation of the FLSA (or of any Michigan law). The Court noted that Plaintiff had been complaining about alleged unpaid wages since 2017, had been "lightly chastised" in the past for failing to properly submit receipts for expense reimbursements, but offered no records showing evidence of unreimbursed expenses. Further, and more important, Plaintiff's complaint immediately prior to being terminated, as evidenced by the text messages between Plaintiff and Betz stored on Plaintiff's phone, related only to his claimed entitlement to vacation pay and/or his dissatisfaction with Defendants' newly-announced paid time off policy, which are fringe benefits not protected under the FLSA. [R, No. 47, PageId.1482-1486]

The evidence shows that on February 15, 2019, Caudle texted Betz inquiring about the procedure for requesting PTO. [R, No. 37-17, PageID.543] When Betz informed Caudle that the PTO policy required that he work two weeks before and two weeks after the proposed paid time off period to receive his vacation pay, Caudle

responded that he would "go to the proper channels" to get his money and that he was "on [his] way to the labor board." [R, No. 37-17, PageID.544] When Caudle threatened to go to the labor board, Betz responded, "[There] is absolutely nothing in the laws that says I have to give you paid days off. Why do you think I [set] it up the way I did, so employees can't screw me. You have been paid every nickel that you earn." [R, No. 37-17, PageID.544] He then instructed Plaintiff to park the truck and reminded him that Michigan is an at-will state. *Id.*

Plaintiff argues that subsequent text messages contain complaints about other wage disputes, unrelated to PTO. But a review of this evidence led the Court to conclude that Betz fired Plaintiff, ***before*** Plaintiff began threatening ***to tell the rest of Defendants' employees*** (not the Department of Labor or other authority) that he believed Defendants were violating labor laws. In reaching its conclusion, the Court also took into account the timing and context in which the February 15 text exchange took place in relation to Plaintiff's acceptance of a new job and Hard Drive's announcement of its new PTO policy, and further noted that Plaintiff's prior complaints about unreimbursed expenses were "mere grumblings." [R. 47, PageId. 1482]

The trial court was also not persuaded by an argument made by Plaintiff for the

first time in his Motion for Reconsideration.[4]  In that Motion, Plaintiff argued that an answer to a confusing question elicited at the very end of Betz's 8-hour deposition is determinative of the notice issue before the Court. Plaintiff pointed to a single line at page 264 of Betz's 268- page transcript. [R. 49, Page ID. 1501-1502] There, it is apparent that Betz is confused by counsel's jumping around with questions regarding the February 15 text messages:

> MR. VINING:
>
> I'm asking him to read the whole text because you're asking him questions about it.  It's about eight pages long in very small print and he's got to read it to answer your question.
>
> Q.    (By Mr. Flynn) Feel free to read it, but I've already said go read it and let me know when you're done and you said you were done.  Was I mistaken?
>
> A.    I've tried to answer you to move this along.  This conversation lasted Friday at 1:40 and it goes all the way down—see, that's the thing.  When I think you're down

---

[4] Plaintiff claims on appeal that he raised this issue in his Brief in Response to Defendants' Motion for Summary Judgment, but a review of the brief page cited does not reference this depositions testimony.  As the trial court stated: "But at summary judgment, Caudle failed to substantively argue for such a theory of circumstantial evidence of his employer's knowledge. While Caudle attached the text messages between him and Betz and Betz's deposition transcript to his summary judgment response, Caudle did not explain the purported significance of Betz's testimony. Importantly, neither Rule 59 nor Rule 60 were intended "to give plaintiffs a second chance to argue facts that could have been or were argued at the time of the original judgment." *Strong v. United States*, 192 F.R.D. 566, 568 (E.D. Mich. 2000). [R. 56, PageId. 1583]

here, you're back up here and when I think you're up there, you're back down here, so I'm not sure where you keep moving stuff around.

[R, No. 37-3, PageID.456-457]

Then, after a brief exchange regarding the content of the messages, Plaintiff's counsel jumps around again, and asks a question that is frankly unintelligible regarding what Betz testifies is *not* part of the text exchange:

Q.   So I'm going to scroll down to page three here.  No, that's okay.  Can you show me prior to 1:40 p.m. on February 15th where you texted him and you said you were promising to pay him back for the time he had worked on your truck, including out-of-pocket expenses?

A.   No.  There's nothing in there saying that.

Q    So he's on his way to the Labor Board to report that. Right?

A.   I assume that's what he was going for, yes.

[R, No. 37-3, PageID.457]

In this exchange, Betz admitted only what was obvious from a reading of the texts themselves -- that they did not include a promise by Betz to pay Plaintiff for time spent on truck repair and expense reimbursement.  The topic had not even come up that day.  Betz's testimony that he *now* assumes that "that" was what Plaintiff was "on his way to report" is not probative of what he knew or assumed at the time.

A far clearer exchange during the deposition reveals what Betz understood at

the time:

> Caudle:     I give you 10 minutes buddy I'm on my way
> to the labor board I'm done playing with you you call me
> Will work this out and Pandora's box won't open very
> disappointed and you
>
> Betz: Bud, I have nothing to be scared of, go ahead.  You
> can threaten me all you want doesn't bother me one bit.
> There is absolutely nothing in the laws that says I have to
> give you paid days off.  Why do you think I set it up the
> way I did, so employees can't screw me.
> [R. 37-17, Page Id. 544]

It could not be more evident that Betz understood Plaintiff's contemplated complaint

to the "labor board" related to the new PTO policy alone.  There is no record

evidence to suggest otherwise,

The trial court therefore concluded that while a trier of fact could reasonably

infer that Caudle engaged in protected activity beginning as early as 2017 regarding

unreimbursed expenses, the record indicates that at the time of termination, Caudle had

only presented the issue of vacation pay, a fringe benefit not protected under FLSA

provisions, and thus not sufficient to meet the notice requirement. Because Plaintiff

could not establish a prima facie case of FLSA retaliation, the Court granted

Defendants' Motion for Summary Judgment.  This action should be affirmed.

## II.  Plaintiff failed to establish a prima facie case under the WPA

The Michigan Whistleblowers' Protection Act (WPA) prohibits employers from

firing an employee "because the employee . . . reports or is about to report . . . a

violation or a suspected violation of a law . . . to a public body." Mich. Comp. Laws § 15.362. To establish a prima facie case under Michigan's WPA a plaintiff must show that she (1) engaged in a protected activity during those times that have been referenced in the complaint, (2) was subjected to the claimed act of discrimination or discharge, and (3) the protected activity caused the discharge or adverse employment action. *Fritze v. Nexstar Broad.*, Inc., 847 F. App'x 312, 314 (6th Cir. 2021).

For the same reason Plaintiff's FLSA retaliation claim should was denied, so too should Plaintiff's claim for relief under Michigan's WPA. Plaintiff alleges Hard Drive terminated him because Betz knew he intended to report "suspected violations of law to a state agency, and/or to the Department of Labor, which are public bodies defined under the [WPA]," [R, No. 5, PageID.19] and that Betz was aware of his intent to report the suspected violations based upon his statement that he was on his way to the labor board. *Id.*

Plaintiff's claim fails because he did not engage in activity protected under Michigan's WPA. As the trial court determined, at the point at which Betz fired Plaintiff, Plaintiff's threat related to his dissatisfaction with Hard Drive's new PTO policy. Michigan law, like the FLSA, does not require employers to provide PTO, and where a PTO is in place, does not mandate its requirements.

Plaintiff points to the Michigan Wage and Fringe Benefits Act, M.C.L. §408.473 which requires employers to "pay fringe benefits to or on behalf of an employee in

accordance with terms set forth in the written contract or policy." [R. 19-1, Brief on Appeal of Plaintiff-Appellant, Page 32] This statutory language does not help Plaintiff. Here, he was not complaining to Betz that he had not been paid for PTO in accordance with Hard Drive policy. He was complaining that he did not think the new policy was fair, and that he should be able to get PTO for a contemplated absence in the future. There was no violation or law, or even a suspected violation of "a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body" as required by the Michigan statute. M.C.L. §15.362 Further, the Michigan Supreme Court has held that Whistleblowers' Protection Act (WPA) envisions an act or conduct that has actually occurred or is ongoing; WPA contains no language encompassing future, planned, or anticipated acts amounting to a violation or a suspected violation of a law. *Pace v Edel-Harrelson*, 499 Mich. 1 (2016).

The trial court therefore correctly granted Defendants' Summary Judgment on Plaintiff's WPA claim.

## <u>CONCLUSION</u>

For all of the above reasons, and for the reasons set forth in the trial court's Opinion, Defendants-Appellees respectfully request that this Court (1) find that Plaintiff-Appellant failed to make out a prima facie case under either the FLSA or the WPA; and (2) affirm the Judgment of the trial court.

Respectfully submitted,

**GASIOREK MORGAN**
BY: /s/ *Barbara D. Urlaub*
    BARBARA URLAUB (P38290)
    Attorneys for Defendants/Appellees
    burlaub@gmgmklaw.com

Dated: June 12, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2023, I electronically filed the foregoing document with the Clerk of the Court using the R, system which will send notification of such filing to all parties via the R, system.

<u>s/Randi Hanlon</u>

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(g)</u>

### Regarding Type-Volume Limitation, Typeface Requirements
### and Type Style Requirements

1.     This brief complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B) because this brief contains 5857 words, excluding the parts of the brief that are exempted by F.R.A.P 32(f).


2.     This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Barbara D. Urlaub*
Barbara D. Urlaub (P38290)

**ADDENDUM**

**DESIGNATION OF RELEVANT DOCUMENTS IN THE RECORD**

| | | |
|---|---|---|
| Amended Complaint | R. 5 | Page ID. ## 15-22 |
| Defendants' Motion for Summary Judgment | R. 37 | Page ID. ## 347-684 |
| Defendants' Reply Brief for Summary Judgment | R. 41 | Page ID. ## 1092-1099 |
| Defendants' Supplemental Exhibits | R. 46 | Page ID. ## 1299-1466 |
| Order Granting Summary Judgment | R. 47 | Page ID. ## 1467-1487 |
| Judgment | R. 48 | Page ID. # 1488 |
| Order Requiring Response to Motion for Reconsideration | R. 52 | Page ID. # 1544 |
| Defendants' Response to Plaintiff's Motion for Reconsideration | R. 54 | Page ID. # 1547-1563 |
| Order Denying Motion for Reconsideration | R. 56 | Page ID. # 1581-1586 |
| Summary Judgment Motion Hearing Transcript | R. 59 | Page ID. ## 1589-1631 |